May it please the court, my name is Lauren Ann Selowitz, and I will be arguing this afternoon on behalf of Petitioner Jose Rubio Calderon. If I may, Your Honor, reserve three minutes for rebuttal. Thank you. Let me just sort of cut to the chase here. Assuming, for the moment, you're right on everything you argue relating to the Supreme Court's opinion in Judulong, and this goes back, didn't the BIA say, look, if we get to the merits, we're going to deny it? Or the IJ, and I guess affirmed by the BIA. And that's a matter of discretion. So even if you win, doesn't your client lose? That's a tricky question, Your Honor, and it has certainly given us a lot of thought since we read the decision. In this case, my client was allowed to file a discretionary waiver in conjunction with an adjustment of status, instead of a standalone discretionary waiver as it was originally intended under the provisions for inadmissibility and its applicability in deportation proceedings as well. We would submit that had he been allowed to pursue that initially before the immigration judge, there's a great likelihood the decision would have been different. There's a basis for saying there's a great likelihood the decision would have been different. In large part, it's based on my experience as an immigration attorney, and in some part it's based on the immigration rules as they are. I have personally witnessed, and I have seen, and it's reflected in the immigration law as well, that someone who presents himself as a lawful permanent resident in front of the immigration court stands in a better position to be able to retain that permanent residence than someone who is asking the court to grant him the privilege of lawful permanent residence. Besides your personal experience, is there any empirical basis? Well, I would reference the court to the Section 240A of the Immigration and Nationality Act, which was in part designed to replace the former INA 212C relief. Section 240A creates two categories of individuals that may seek cancellation of removal, a waiver of their removal in order to allow them to remain in the United States. Lawful permanent residents under that category must merely show that they have been in the United States as a lawful permanent resident for five years, that they have resided continuously for not less than seven years, and they've not been convicted of an aggravated felony, and then it becomes a mere balancing of the equities. In contrast, someone who does not have permanent residence, someone who is seeking permanent residence through that waiver process must instead show that they've been here for ten years, that they've been a good person of good moral character for ten years, that they haven't been convicted of numerous offenses, many of which are very minor, and they then have to demonstrate exceptional and extremely unusual hardship to their lawful permanent resident or USC spouse or child. I think that that example right there clearly illustrates the dichotomy in the immigration system as it's applied to people who have their permanent residence and people who are seeking permanent residence. Robertson What I'm not following here, though, in Mr. Calderon's case, he was considered under for a waiver under Section 212C. And he had a hearing, right? Yes. We had a full hearing on the merits. He was considered for a waiver, but as I'm trying to illustrate for the Court, and I realize it's a difficult idea to latch onto, that he was permitted to file a waiver, but he was asking the Court to consider him as someone who did not have permanent residence and was seeking permanent residence. What about the government cites the matter of Marin? I guess that was the factors for 212C relief were considered there. I mean, wouldn't the analysis be exactly the same? I mean, wouldn't it be futile to even if we were to let him go back, it would be the same thing over again, right? I submit that it wouldn't be, Your Honor, that he would be looked at as someone who is retaining his permanent residence and is therefore only seeking a waiver of the criminal activity, as opposed to someone who is also asking to gain permanent residence and receive a waiver as criminal activity. 212C is viewed, I mean, I tried to find a citation in case law to necessarily help me with this particular point that I'm going to make now, but 212C is viewed in the immigration courts as something that's rather liberally granted. There's even reference, I believe, in the petitioner's argument in the case before the Supreme Court about how it is widely available and liberally granted, and I think that, I believe that petitioner would have been viewed differently by the Court. The immigration judge's decision and Board of Immigration Appeals' decision in his case reflect that it was a very close call, that he was viewed as someone who has had a lengthy residence in the United States, has been married to a U.S. citizen and has children with her after a very long time, has other family members here, and only has this one conviction on his record. It seems to me that it's apparent from the decision it was a very close call, and I think if we were to change this one underlying factor, which set the tone for the whole case, then that would change the outcome. I know you're saying, well, the court, I mean, your experience as an attorney, with all due respect, we can't rely on that, but how does the analysis differ between the two, what he had and what you'd like him to get? I mean, it's still a 212C analysis. Do the factors change in terms of what's considered? No, Your Honor is right. The factors are the same, whether it's a waiver under 212C in conjunction with an adjustment or it's a waiver standalone, and in fact, they're the same factors that come into consideration in the cancellation of removal category that I referenced and other categories under the immigration law. I guess it's more about the positioning and the attitude and the approach that would have been taken with his case. I mean, from the very beginning, we were fighting an uphill battle because we should be allowed to file this standalone waiver. But isn't the real problem here the nature of the underlying conviction? I mean, that's the one thing that doesn't change, and no matter whether he's considered initially for 212C relief or under the adjustment of status waiver approach, that's the problem that you have. And isn't that a matter that is committed to the BIA's discretion in terms of what weight to give to that conviction? Yes. That is the heart of the issue, I suppose. I mean, without this conviction, we wouldn't be having this conversation. Well, without this specific conviction. Yes. But it is a conviction for which there is a waiver. The immigration law provides that he is allowed to have a waiver for it. If he's eligible, and if he's, let's assume for the moment he's not eligible or he is eligible because they messed up on aggravated felony, but isn't this a crime of moral turpitude? Yes. And I don't think that they messed up in categorizing it as an aggravated felony, but that's not before us today. Whether it's considered an aggravated felony or a crime involving moral turpitude, the provisions of 212C allow that he is eligible for a waiver. And it is a serious crime. We have never denied that, but it happened in 1992. It's 20 years old now. My client has been here for a significant amount of time and has extensive other equities that we believe if the initial consideration had been different, if he had been appearing before the court simply as someone looking for a waiver of that criminal activity, not also asking for the privilege of adjustment of status, that the court's conclusion would have been the same. When I look at the IJ's decision from 2009 and the BIA decision of 2010, the IJ notes these really were significant and substantial equities. And he had listed them before. But on the alternative, the very, very serious nature of this crime, unfortunately from the respondent's perspective, the court does not believe the respondent can meet the requirements to merit the kind of discretion. Although I'm truly sympathetic about the people who are going to be impacted, whether the family, his three children, et cetera, he just couldn't go in his favor. When you go to page throughout and ends up on page 11, it's sensitive that he has a long-term tenure, sensitive that this may cause lifestyle changes, sensitive to the effect on others. But he concludes on 12, I just can't do it. And the BIA is saying the same thing. It's almost, it's a tough call, but once they get to those merits, do we have the discretion? I think that you do, Your Honor, and I think that Your Honor raises. How do I get discretion to do when something says that we're divested, under 1252, we're divested of discretion? Well, they never. We're divested of jurisdiction when there is discretion involved. They only got to that discretionary determination after making an initial eligibility determination utilizing the comparable grounds approach. If you go all the way back to the beginning, and I guess I would ask the court to consider this case. I realize it is different, but look at it in the context of if he was initially denied relief using the comparable grounds approach under 212C. We were able to ask for an alternative relief from the court, much in the same way as if he had had asylum or withholding as an alternative or voluntary departure. We were able to seek an alternative form of relief as we often have to do in  This is a motion to reopen, right? It was an appeal, and then it was a motion to reopen, and we're in consolidated proceedings. And I think Your Honor raises the motion to reopen. I think that only adds to the reasoning as to why if we go back to the very beginning and we put him in a slightly different position in front of the court as someone seeking that initial waiver that he wanted as a lawful permanent resident, Your Honor cited the points in the immigration judge's decision that show that this was a very close call. If we change those... Your suggestion would have been better off never seeking adjustment of status. Yes. I mean if we had not sought that as an alternative or the judge had not found that he was eligible for that alternative, then I think that would be an automatic that this court would be sending the case back because he was denied relief on a matter of eligibility. He did have an alternative to pursue, and in this case, it's a very overlapping alternative, so it's hard to distinguish the two. But our position is that the initial relief he was seeking from the court, a discretionary waiver of deportability under INA 212C, he was denied that based on the comparable grounds approach. Now that that approach is no longer valid, it should be sent back to the court for a redetermination of that issue. For lack of a better, you've got two paths to get to 212C. You used one, but you want to go to the other. But don't you still get back to the same place? And I guess that's where we feel that we don't. We feel that he is presented to the court in a different manner. And I don't really know, especially as I see my time is about to expire, really know another way to articulate that other than my experience, what I've seen in front of the immigration courts, and the fact that this has been rather liberally granted to individuals with very serious crimes like my clients. Go ahead, Tom. I know this is irrelevant, but has Mr. Calderon been removed? No. Peru? No, he's still here. He is still here. He is under an order of supervision with Immigration Aid checks in periodically, and he is still here. Isn't the best you can hope for is that we remand the case to the BIA for them to consider what to do in light of Judulon? Yes. I think that would be a very acceptable solution at this point, and I hope that given all the factors and what we argued on motion to reopen in this case, that the BIA would then decide to send it back to the immigration judge. And my time has expired, so thank you. Okay. Thank you very much. We'll get you back on rebuttal. Mr. Jolly. May it please the Court, my name is Lance Jolly. I represent the respondent, the Attorney General of the United States. I guess to cut to the chase, it's our position that remand would be futile, even in light of Judulon. And I said that at the outset, but let's assume for the moment there's a Supreme Court case that's come along, and you might completely be right that it's futile, but why not at least give them the shot, even though it may be a one-in-a-hundred shot? This Court's... In other words, let the BIA have the first chance to deal with how it evaluates this case in light of the negating of the comparative analysis that Judulon says you cannot do. As Your Honor pointed out, the best-case scenario for a petitioner is a remand for... That consideration. For that consideration. However, the Board, in all likelihood, will just deny it in its discretion. And... You're right. She agrees. They may very well do it now. She may say, I've got arguments. But why not allow that chance? I mean, we had another case this morning in which another judge, who was with Judge Shigaris and myself, said, you know, why is it that you wait so long? Why is it that you let somebody have not just a foothold here, but basically become, you know, for all intents and purposes, about as American as you and I are, except for the label? And this is a case where you waited 15 years, right? And that just... You put us in a situation where you're saying, okay, that's the law, that's what we're going to do, but why not give them at least, without really ruling, just say, just an order of remand saying, consider it in light of Judulon, and you may be back, you may be lose. You know, if one were to bet, one were to bet, your side would prevail. There's no doubt. But why not give that chance? Well, in light of the futility doctrine, that's what it is. You don't think there's any chance whatsoever? According to the board's decisions, no. It's just 2011. The board's decision is very recent. Sure, it took a while for DHS to put them into proceedings, but the board viewed his residence as a positive factor in weighing the factors in whether to... I have the board decision coming, the reopening coming down in June of, it is June 2011, and Judulon coming down in October of 2011. Correct. So why don't we give them... Oftentimes what we do with district courts is to say, you take the first shot at it, and if people aren't happy, they can come back. Petitioner could have, I suppose, filed a motion to reopen to the board in light of Judulon. On the motion to reopen, the evidence that was presented, the wife's condition, that's material evidence. Isn't that material to a question of a 212 waiver, a 212c waiver? The board considered it. Why would not the board let the IJ in the first instance determine the significance of material evidence in the weighing of the equities in a case that was this close? Well, the board has de novo review over discretionary determinations, and instead of prolonging proceedings by remanding to the IJ for a first crack, when it has a de novo review of discretionary determinations... Has the IJ afforded an opportunity for a hearing where that could have been developed at greater length in terms of the impact on the spouse? He's had a hearing. The board considered the evidence as raised. He's been given a significant process. I'm sure the board could have, but it does not need to, and I see no basis that the board would do that given his decisions in these proceedings. Okay. Anything else? I have one more question. In terms of rehabilitation, doesn't a person's actions speak louder than their words, and why is it so significant that he does not acknowledge guilt? He contests that, maintains his innocence. Yet, if you go back to the 1980s when this act was committed, he's got almost 25 years or more of conduct where we have no problem that we can see with him. Wouldn't that suggest that he's rehabilitated, even if he doesn't admit guilt? It suggests some rehabilitative efforts. The board, in considering his efforts, was going from the baseline of his serious conviction, and I'm not sure the careful reading of the board's decision doesn't mean. One reading could be that the board wanted him to say he was guilty, but that's not how I read it. I read it as the board wanted to see why he was, if he was convicted, even though he was innocent, the board wanted to know why. How could that have happened? In the case of the nature, especially where it's a young victim, and the victim has no motivation to lie, yet he maintains his innocence, the jury is left with that. Right. Left with that. Yes. Had he, I don't know, had he introduced evidence from the family? Maybe the victim now wants to recant somewhat, or the family or his wife at the time of that. Had he submitted evidence such as that? Maybe. Who knows? The fact is that the board weighed the factors as it was meant to, and at its discretion denied. And your argument is that if we were to get back there, it would be exactly the same consideration? Apply the Marin factors as it did, and whether the 212C was a waiver of inadmissibility or deportability, the board has applied the same Marin factors. And so there's no evidence that there would be any difference. If they were to apply the 212C to petitioner, there's no reason to say that they would apply a different standard. I believe I've answered the questions of the court. Thank you very much. Thank you. Ms. Ancelowitz. If I may briefly just respond to a few of the comments. Would you address? Sure. How are they going to do anything different with respect to the analysis or the weighing or the balancing of the Marin factors? Well, Your Honor quoted some of the language in the immigration judge's decision, and we've referenced the board's decision and the board's decision this summer on the motion, and it shows that it was a very close decision. I think that one more opportunity, Your Honor asked why not, one more opportunity to review these factors, consider yet again the length of time this man has been in the United States, his continued compliance with immigration and with his requirements under the New Jersey state law, his wife's medical condition, which continues to deteriorate. One more chance to look at those factors, and the pendulum could swing our direction. You know, it was clearly a very close call. The immigration judge remarks in his decision how difficult it was for him to come to this conclusion, and I think if they were given one more opportunity to look at it, we have a chance. Maybe it's not a great likelihood, but we have a chance that a man who has been in the United States for 22 years has been married to the same woman for more than 13 years, and they have two children together, and he's helping raise one of her children and has done nothing else on his record as a blemish other than this incident from more than 20 years ago or nearly 20 years ago. I think it could swing in our direction. Have you represented this person since when? I've represented him, I believe it was right around 2007. He came to our office when he initially got the notice to appear in court. Actually, I take that back. He came to our office just before that when he was looking to apply for renewal of his screen card. As was remarked in either the petitioner or the respondent's case arguments in Judulang, many of these people that apply for 212C, they have to have convictions that are more than 15 years old or they're not eligible. They come to the attention of the courts, not because somebody has gone out and picked them up because they've done another wrong, but they come to the attention of the courts because they're either applying to renew their green card, they're traveling, or they're applying for citizenship, and that was the case in Mr. Calderon's incident. He was simply applying to renew his green card when he came to the court's attention. Okay. Thank you. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement.